## THE PATRICK McGUIRL.

### (District Court, S. D. New York. November 12, 1908.)

Towage (§ 15*)—Sinking of Tow—Negligence.

Sinking of a lighter when in tow of a tug on a hawser. *Held* that there was no contract, as alleged, to take especial care of the lighter. Viewed from the point of negligent towage, no sufficient proof of negligence was given to establish liability on the tug's part.

[Ed. Note.—For other cases, see Towage, Dec. Dig. § 15.*]

(Syllabus by the Judge.)

Wray & Callaghan, for libellant.
James J. Macklin, for claimant.

ADAMS, District Judge. This action was brought by Lester W. Beasley, the owner of the lighter Lizzie D. Beasley, against the tug Patrick McGuirl, and her owner, to recover the damages, said to amount to $2,400, sustained through the sinking of the Beasley and cargo of glue stock and lumber in the East River on the 25th of May, 1907, while in tow of the tug on a hawser of about 50 feet. It is alleged that the tug was sent by Patrick McGuirl, her owner, to perform a contract for the towage of the Beasley from pier 38, North River, to the foot of 92nd Street, East River. It is further alleged that the contract between the parties provided that McGuirl should furnish for the purpose a small tug and would not employ in the service one of his sea-going tugs for the reason that the lighter was a small one

and McGuirl agreed that he would not furnish a tug that would tow the lighter under water. It is further alleged that the lighter took on board certain glue stock and lumber and about 3:30 P. M. the tug started to tow the lighter to her destination; that before starting the master of the lighter cautioned the master of the tug not to tow the lighter fast, as she was a small vessel and the tug was a large one, not suitable for the service; that the tug proceeded with her tow down the North River around the Battery and up the East River, and off pier 12, North River those on the lighter hailed the tug and signalled to warn her that the lighter was in danger on account of the speed of the tug; that there was no lookout on the tug and those in the pilot house were so negligent that they did not see those on the lighter but continued on with unabated speed; that when the tug had reached a point off the foot of pier 10, East River, those on the lighter again hailed and signalled to the tug, but those on board were so negligent that they did not see nor hear nor heed the hails and signals, which were given by the lighter, but continued on with unabated speed; that when the tug had reached a point off the foot of 10th Street, East River, those on the lighter again hailed and signalled to the tug but no attention was paid by it and she kept on at the same speed; that at the time the last signal was given the lighter was down by the stern and listed to port with the water over her port rail, which condition was caused by the negligent towing of the tug and as she continued, the lighter listed so far to port that she lost a portion of her deck load and soon thereafter sank, leaving her cargo of lumber floating in the water, causing the damages complained of.

After various admissions and denials, the claimant further averred as follows:

" * * * And at or about the time mentioned in said libel the said lighter Lizzie D. Beasley laden with a cargo was taken in tow by the said Steamtug Patrick McGuirl at Pier 38, North River, the lighter being made fast to the said steamtug by a short hawser astern of the said steamtug. That said steamtug proceeded with said lighter in tow down the North River, the tide being the first of the flood, going at a very slow speed, rounded the Battery and proceeded up the East River still going at a very slow gait, and whilst so proceeding and about abreast of North Second Street, Borough of Brooklyn, New York, the said lighter listed, and turned over on her port side, dumping her cargo which capsizing occurred about 4:30 of the day mentioned in said lighter; that the weather conditions were favorable and the water comparatively smooth, and there was no indication of any kind, previous to her capsizing that the same would happen nor any warning nor signal of any kind given by those on board said lighter to those in charge of the said steamtug of there being anything the matter with the said lighter; and claimant and respondent believes that the capsizing of said lighter was owing to her unseaworthy condition or improper stowing and loading of her cargo, or the unfitness of the said lighter to withstand the ordinary vicissitudes of navigation, with the cargo she had laden on board on the trip she had undertaken; or that she was leaking and her pumps not properly attended to which brought about her capsizing."

The testimony shows that the lighter did turn over and capsize and cause considerable damage. It appears that the tug was a small one of about 67 feet long, and suitable for towing the lighter in question. There is a direct contradiction in the testimony as to any warnings or signals given by the lighter before or after starting on the trip and

though the witnesses on the lighter may have given signals on the voyage, they were not of such a character as the tug heard or could be expected to hear. It is claimed that a deck man stood on the cargo of lumber and shouted, but if it is true that the shouting took place, it was not loud enough to attract the attention of those on the tug, although there was a competent man in the wheelhouse, the windows of which were mostly open and the door leading into the pilot house from aft was also open.

The master of the tug, in the wheel house, observed the tow in proceeding down the North River, where the flood tide prevailed. She was there towed at the rate of about 4 miles an hour over the land, and she seemed to act all right. In going around the Battery in the vicinity of the Wall Street ferry in the East River, she was still observed and seemed to be proceeding properly, also until she reached the vicinity of the Houston Street ferry on the Brooklyn side where she was observed to be careening and shortly went over. She had encountered the swells which prevail in the rivers but nothing out of the ordinary nor sufficient to indicate that especial care was required. Off pier 1, North River, the master of the tug observed that the lighter was sheering somewhat and reduced the speed and then proceeded at about the rate of 3 miles an hour, as aided by the tide.

The testimony of the master was confirmed by the engineer of the tug and her deck hand. The engineer, who was working the engine, looked at the tow occasionally, and said that after she turned to go around the Battery, she seemed to follow all right. When nearing pier 1 she was slowed down to one-half speed and he was instructed by another bell to go slower still, all of which he obeyed. He said in going up the East River "she would dive once in a while" but there was nothing unusual in it. He saw her go over but shortly before that she seemed to be coming after the tug. He then saw her go down stern first. The deck hand said he was on the stern of the tug in going down the North River and remained there until after they passed the Battery, during which time there was no hail from the lighter and she proceeded all right; that he then went into the pilot house but heard no hails until the lighter was turning over; that in the East River he looked out occasionally and she was proceeding the same as any lighter would. Other witnesses for the tug were examined and there was no material variance from the testimony above outlined.

There is no such preponderance of proof on the libellant's part as would establish any special agreement for care of the lighter or necessity therefor, and the case resolves itself into a question of whether there was negligence on the tug's part which would condemn her under an ordinary towage contract. The evidence in this regard is not, in my judgment, sufficient to establish any lack of care on the part of the tug. There are some matters in the case which might create doubt but it is well settled that that is not sufficient to establish a right of recovery.

The libel is dismissed.